FILED

2020 Aug-20  PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LON MONCRIEF, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Case No. _____ | |
| | ) | |
| TENNECO, INC. d/b/a/ | ) | |
| FEDERAL-MOGUL | ) | |
| POWERTRAIN | ) | |
| | ) | Jury Trial Requested |
| Defendant. | ) | |

## COMPLAINT

### I.   JURISDICTION

1. Plaintiff is bringing claims against his former employer alleging that it violated two federal statutes, the Family and Medical Leave Act ("FMLA") and the Employee Retirement Income Security Act (ERISA).

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, and 1343(a)(4). This suit is authorized and instituted pursuant to The Family and

Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, and The Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1140.

3. Defendant employed the Plaintiff in Athens, Alabama (Limestone County)

within the Northeastern Division of the Northern District of Alabama.

## II.   PARTIES

4. Plaintiff, Lon Moncrief, ("Moncrief" or "Plaintiff") is an adult resident of

Madison County, Alabama.

5. At all times relevant to this action, Plaintiff was employed by Defendant.

6. Defendant, Tenneco, Inc., d/b/a Federal-Mogul Powertrain ("Federal-

Mogul" or "Defendant") is a corporation doing business within the State of

Alabama with offices located in this judicial district.

7. Defendant is an American Fortune 500 company that has been publicly

traded on the New York Stock Exchange since November 5, 1999 under the

symbol TEN.

8. Headquartered in Lake Forest, Illinois, Tenneco does business

internationally designing, manufacturing, and marking Ride Performance

and Clean Air products and technology solutions for diversified markets,

including light vehicle, commercial truck, off-highway equipment and the

aftermarket, with 2017 revenues of $9.3 billion and approximately 32,000

employees worldwide.

9.  On October 1, 2018, Tenneco completed the acquisition of Federal-Mogul,
    a global supplier to original equipment manufacturers and the aftermarket
    with nearly 55,000 employees globally and 2017 revenues of $7.8 billion.

10. During the events relevant to this action, Defendant employed at least 50
    people within a 75-mile radius of Plaintiff's work location.

11. Defendant was Plaintiff's employer within the meaning of the FMLA and
    ERISA.

### III.   ADMINISTRATIVE REMEDIES

12. Plaintiff has no appeal rights regarding the loss of employer sponsored
    health benefits because of termination and is therefore entitled to bring this
    ERISA action.

13. Plaintiff has no administrative remedies regarding his rights under the
    FMLA and is therefore entitled to bring this action.

14. All conditions precedent to filing suit have been fulfilled.

### IV.   FACTS

15. For 35 years, from August 1984 to September 2019, Mr. Moncrief worked
    for Federal-Mogul at the Athens, Alabama site as an Environmental and
    Safety Engineer (sometimes referred to as EHS Coordinator).

16. Mr. Moncrief was a full time, salaried employee, regularly working 55 hours in a work week.

17. Mr. Moncrief was entitled to and received employer sponsored health benefits throughout his employment.

18. Throughout his employment with Federal-Mogul, Mr. Moncrief usually met or exceeded expectations on his employment evaluations.

19. Federal-Mogul had assigned an intern to work with Mr. Moncrief for nearly a full year in 2018, the intern provided 40 hours a week of assistance with environmental, health, and safety job functions.

20. Between himself and the intern, Mr. Moncrief was able to devote approximately 95 hours per week on environmental, health, and safety job functions.

21. In or around August of 2018, Federal-Mogul transferred Bob Clark from its Frankfort site to its Athens site as Plant Manager.

22. Federal-Mogul did not offer Mr. Moncrief's intern a permanent position. Her last day with Federal-Mogul was August 29, 2018. Federal-Mogul and Bob Clark never hired another intern or any additional or substitute help for Mr. Moncrief.

23. On August 31, 2018, Mr. Moncrief had worked over 1,250 hours for the

Defendant in the preceding 12 months.

24. On August 31, 2018, Mr. Moncrief's wife suffered a massive stroke requiring emergency medical treatment.

25. Upon hearing about his wife's stroke, Mr. Moncrief left work to rush to her.

26. The stroke left Mrs. Moncrief with left side paralysis, and she is confined to a wheelchair.

27. Mr. Moncrief applied for and received intermittent FMLA leave to care for his wife.

28. After her first stroke, Mr. Moncrief began using intermittent leave under the FMLA as needed to care for his wife and her serious medical condition.

29. Mr. Moncrief would use the intermittent leave to take his paralyzed wife to physical therapy and other doctor's appointments related to her serious medical condition.

30. From the date of her stroke through the end of 2018, a four-month period, Mr. Moncrief used FMLA Leave and vacation to take off approximately 20 days, both full and partial, related to the care of his wife.

31. Mrs. Moncrief suffered a second stroke on or around November 1, 2018.

32. The week of November 26, 2018-November 30, 2018, Mr. Moncrief was away from the plant for 3 days related to his wife's appointments and care.

33. On November 30, 2018, Bob Clark asked Mr. Moncrief "Have you always been like this?" In response, Mr. Moncrief stated he did not understand what Mr. Clark meant, but no, he had not always had a wife who suffered a major stroke and needed constant care. Mr. Clark responded he had 650 people who needed Mr. Moncrief at the plant.

34. Mr. Clark stated he needed Mr. Moncrief engaged and on the production floor and told him to "figure it out" when Mr. Moncrief asked what he should do about finishing his time sensitive environmental reports – which kept him from the production floor.

35. December 5, 2018 to December 7, 2018, Mrs. Moncrief was back in the hospital, taken by ambulance, and having surgery related to bile duct blockages and gallbladder. She remained in the hospital for the month of December, but Mr. Moncrief worked at least partial days every weekday to the Christmas Holiday.

36. In December 2018, Federal-Mogul, through Mr. Clark, placed Mr. Moncrief on a performance improvement plan "PIP" mandating floor rounds on each shift at least four hours per day and an open office door among other things.

37. Mr. Clark refused to provide Mr. Moncrief any additional assistance like what his intern had provided before his need for FMLA.

38. Because of Mr. Clark's mandated time on the floor, Mr. Moncrief could not take his wife to Physical Therapy appointments and had to depend on his then 76-year-old mother in law to manage the appointments and wheelchair.

39. Mr. Moncrief could not miss Mrs. Moncrief's doctor's appointments because it was essential to Mrs. Moncrief's treatment that her husband engage in a dialog with the doctors.

40. From January 2019 through September 2019, Mr. Moncrief continued to take intermittent FMLA leave for his wife's medical appointments – other than Physical Therapy.

41. Despite needing time off, he worked at least partial days every non-holiday weekday except approximately 10 in 9 months.

42. Between May 1, 2019 and May 13, 2019, Mr. Moncrief used 16 hours of FMLA for 4 medical appointments related to his wife's condition.

43. On May 13, 2019, Mr. Moncrief was approximately one hour late to work due to a dental appointment.

44. On May 13, 2019, Mr. Clark e-mailed Mr. Moncrief "We will talk tomorrow about your attendance."

45. Between May 2019 and August 2019, Mr. Clark asked Mr. Moncrief if his wife was on Federal-Mogul's insurance.

46. Mr. Moncrief informed Mr. Clark that Mrs. Moncrief had been on her own health insurance coverage under COBRA but that at open enrollment at Federal Mogul, Mr. Moncrief planned to move his wife to his plan provided as a benefit of his employment at Federal-Mogul.

47. In early August 2019, Mr. Moncrief uncovered a two-month period wherein a department not under his supervision had not conducted required inspections for two months at the first of the year.

48. The finding had been cured by the time it was discovered in the internal audit and Mr. Moncrief discussed it with the plant.

49. The department with the violation had not been under Mr. Moncrief's supervision for 4 years.

50. The finding was marked as a "major" audit finding by an external third-party auditor during an audit conducted between August 12, 2019 and August 16, 2019.

51. This was the first major finding during the 20-year history of the environmental management system which was managed by Mr. Moncrief.

52. Quality audits by third party auditors, not managed by Mr. Moncrief, frequently received major findings, without termination of those managing the quality management systems.

53. On August 13, 2019, Mr. Clark placed the blame for the major finding on Mr. Moncrief and stated he was "glad" the external audit "found it."

54. On August 19, 2019, Mr. Clark cursed at Mr. Moncrief in front of staff concerning a safety assessment on some equipment.

55. On September 13, 2019, Mr. Moncrief submitted his renewed paperwork for intermittent FMLA leave for the next twelve months.

56. On September 16, 2019, Clark fired Mr. Moncrief.

## V.   STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE
### FMLA INTERFERENCE

57. Plaintiff adopts and realleges the allegations of paragraphs 1-56 as if fully set forth herein.

58. Defendant is a covered employer under the FMLA.

59. Plaintiff was an eligible employee under the FMLA in that he worked for the employer for more than 12 months, worked more than 1250 hours within the 12 months immediately preceding the need for coverage, and worked at a facility that employed more than 50 people within a 75-mile radius.

60. Plaintiff requested the use of intermittent FMLA leave to care for his wife's serious health condition.

61. Defendant interfered with Plaintiff's right to FMLA by Clark's

discouragement of leave and extreme expectations regarding attendance.

62. Clark's action interfered with Plaintiff's right to take FMLA leave to take his wife to Physical Therapy.

63. Defendant interfered with Plaintiff's right to FMLA by Clarks' withholding of resources including additional labor sources.

64. Clark made multiple statements and took actions indicating he had issues with Mr. Moncrief needing time away from the plant for FMLA purposes.

65. Defendant interfered with Plaintiff's right to FMLA leave by placing him on a PIP requiring floor rounds and open doors as to monitor his attendance.

66. Defendant interfered with Plaintiff's right to FMLA leave by terminating him upon his request for renewed intermittent FMLA leave.

67. As a consequence of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment, humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

68. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, liquidated damages, attorney's fees, costs, injunctive relief, and declaratory judgment is his only means of securing adequate relief.

69. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

## RELIEF

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

a.  Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by the FMLA;

b.  Grant injunctive relief, including but not limited to, a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating the FMLA;

c.  Grant Plaintiff an Order requiring Defendant to make him whole by granting appropriate declaratory relief, backpay, front pay, liquidated damages, attorney's fees, expenses, interest, and costs; and

d.  Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT TWO
## FMLA RETALIATION

70. Plaintiff adopts and realleges the allegations of paragraphs 1-56 as if fully set forth herein.

71. Defendant is a covered employee under the FMLA.

72. Plaintiff was an eligible employee under the FMLA in that he worked for the employer for more than 12 months, worked more than 1250 hours within the 12 months immediately preceding the need for coverage, and worked at a facility that employed more than 50 people within a 75-mile radius.

73. Plaintiff requested and used intermittent FMLA leave to care for his wife's serious health condition beginning August 31, 2018.

74. In November 2018, Clark asked Mr. Moncrief if he had always been this way, the same week Mr. Moncrief had to utilize several days of FMLA leave in a row.

75. Defendant placed Plaintiff on a PIP requiring floor rounds and open doors as to monitor his attendance in December 2018

76. Plaintiff renewed his request for intermittent FMLA leave on September 13, 2019.

77. Defendant terminated Mr. Moncrief on September 16, 2019.

78. As a consequence of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment,

humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

79. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, liquidated damages, attorney's fees, costs, injunctive relief, and declaratory judgment is his only means of securing adequate relief.

80. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

## RELIEF

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

e.   Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by the FMLA;

f.   Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating the FMLA;

g.   Grant Plaintiff an Order requiring Defendant to make him whole by

granting appropriate declaratory relief, backpay, front pay, liquidated damages, attorney's fees, expenses, interest, and costs; and

h. Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT THREE
## ERISA § 510

81. Plaintiff adopts and realleges the allegations of paragraphs 1-45 as if fully set forth herein.

82. Plaintiff was entitled to and utilized employer sponsored health care benefits.

83. Beginning August 31, 2018, Plaintiff's wife suffered a series of serious health conditions and hospitalizations including two strokes that left her paralyzed on the left side.

84. Defendant was aware of Plaintiff's wife's serious medical conditions.

85. Between May 2019 and August 2019, Clark, the manager for Defendant's Athens location asked Plaintiff if his wife was on the Federal-Mogul health insurance.

86. Mr. Moncrief stated she was not but he planned to add her during the company's open enrollment.

87. Defendant terminated Plaintiff on September 16, 2019 before he could add

his wife to the company benefits.

88. Mr. Moncrief was entitled to protection under ERISA.

89. He was qualified for his position.

90. He was terminated close in proximity to his employer learning of his intention to add his wife to the employer sponsored health benefit plan.

91. Mr. Moncrief's termination was motivated by Defendant's desire to prevent the addition of his wife and her serious medical conditions to the employee sponsored health benefit plan.

92. As a consequence of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, lost retirement benefits and social security, and added expense of COBRA premiums.

93. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, attorney's fees, costs, injunctive relief, and declaratory judgment is his only means of securing adequate relief.

94. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

**RELIEF**

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

    i.   Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by the ERISA;

    j.   Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating the ERISA;

    k.   Grant Plaintiff an Order requiring Defendant to make him whole by granting appropriate declaratory relief, backpay, front pay, , attorney's fees, expenses, interest, and costs; and other equitable relief as justice may require.

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL CLAIMS SO TRIABLE.

Respectfully Submitted,

Heather Newsom Leonard
ATTORNEY FOR PLAINTIFF

OF COUNSEL:

HEATHER LEONARD, PC

2105 Devereux Circle, Suite 111
Birmingham, AL 35243
(205) 977-5421 – voice
(205) 278-1400 – facsimile
Heather@HeatherLeonardPC.com


                                        /s/ Leslie A. Palmer
                                        Leslie A. Palmer
                                        ASB-0436-L40P
                                        Attorney for Plaintiff

OF COUNSEL:
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
E-mail: leslie@palmerlegalservices.com
Tel: (205) 285-3050
Fax: (205) 386-4383


**Defendant to be served by Certified mail at the following address:**

Tenneco, Inc. d/b/a Federal-Mogul Powertrain
c/o Registered Agent Corporate Creations Network, Inc.
400 Eagle Point Corporate Drive
Birmingham, AL 35242